NOTICE

Decision filed 04/06/18. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2018 IL App (5th) 170079

NO. 5-17-0079

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 17-CF-20 |
| | ) | |
| SAMUEL B. BURCHELL, | ) | Honorable |
| | ) | Stanley M. Brandmeyer, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court, with opinion.
Justices Welch and Overstreet concurred in the judgment and opinion.

**OPINION**

¶ 1    The State appeals the order of the circuit court of Clinton County that granted the motion to dismiss of the defendant, Samuel B. Burchell. For the following reasons, we affirm.

¶ 2                                    FACTS

¶ 3    On February 14, 2017, the defendant was charged, in a one-count information, with "Unlawful Failure of Sex Offender to Report Absence From Address of Registration." On February 17, 2017, the defendant's court-appointed counsel filed a "Motion to Dismiss Pursuant to 725 ILCS 5/114-1" wherein the defendant contended, *inter alia*, that the information failed to specify the address of registration from which the defendant was allegedly temporarily absent. On March 1, 2017, the State filed an amended information, which is the charging instrument at issue in this appeal. In the amended information, the State included the previously-missing

1

address and alleged the defendant was a person required to register in accordance with the Sex Offender Registration Act (SORA) (730 ILCS 150/1 *et seq.* (West 2016)). The State further alleged that the defendant committed the offense of "Unlawful Failure of Sex Offender to Report Absence From Address of Registration" during the time frame of "on, about or between the 12th day of November, 2016, through the 12th day of February, 2017" in Clinton County when the defendant "knowingly failed to report within 3 days, in person, to the *** agency of jurisdiction of his last known address, that he was temporarily absent from his current address of registration *** for 3 or more days."

¶ 4    Also on March 1, 2017, a hearing was held on the defendant's motion to dismiss, at which the State brought to the court's attention the filing of the amended information. The trial judge, the Honorable Stanley Brandmeyer, noted that another trial judge, Judge Middendorff, had ruled in a different, but factually similar, case. The defendant adopted the argument put forward by Judge Middendorff in his ruling, arguing that although it was not binding precedent, he believed it was well-reasoned. Judge Brandmeyer agreed and granted the defendant's motion to dismiss. This timely appeal followed. Additional facts will be provided as necessary below.

¶ 5                                  ANALYSIS

¶ 6    The parties agree on the general principles of law involved with the dismissal of an information in a criminal case. As the Illinois Supreme Court has recognized, an individual accused of a crime "has a fundamental right, under both the Federal Constitution (U.S. Const., amend. VI) and the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, § 8), to be informed of the 'nature and cause' of criminal accusations made against" that individual. *People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996). The failure to charge an offense "implicates due process concerns." *Id.* Section 114-1(a)(8) of the Code of Criminal Procedure of 1963 (Code) (725 ILCS

2

5/114-1(a)(8) (West 2016)) provides that, "[u]pon the written motion of the defendant made prior to trial before or after a plea has been entered," the trial court may dismiss an information if "[t]he charge does not state an offense." This court has noted that, pursuant to the Code, to sufficiently allege the commission of an offense, the charging instrument must state the name of the offense, cite the statutory provision alleged to have been violated, set forth the nature and elements of the offense charged, state the date and county of the offense, and state the name of the accused. See, *e.g.*, *People v. Terry*, 342 Ill. App. 3d 863, 867 (2003); see also 725 ILCS 5/111-3(a) (West 2016). The purpose of the Code's requirements "is to inform the accused of the nature of the offense with which he is charged so that he may prepare a defense and to assure that the charged offense may serve as a bar to subsequent prosecution arising out of the same conduct." *Terry*, 342 Ill. App. 3d at 867. When the State appeals from the dismissal of a charge, we review *de novo* whether the charging instrument meets the requirements of the Code. *Id.* at 868. In so doing, we will consider the plain and ordinary meaning of the language of the charging instrument, "as read and interpreted by a reasonable person." *Id.* We note, however, that "[w]hen the sufficiency of the charging instrument is attacked in a pretrial motion," our *de novo* standard of review requires us "to determine whether the instrument *strictly* complies with" the Code. (Emphasis in original.) *DiLorenzo*, 169 Ill. 2d at 321-22.

¶ 7       As we undertake our review, we are mindful that "[t]he precise allegations necessary to accomplish [the purpose of the Code's requirements] may vary depending upon the statutory provision alleged to have been violated and the nature of the offense." *People v. Gerdes*, 173 Ill. App. 3d 1024, 1029 (1988). If "the statute defining an offense specifies the type of conduct prohibited, the particular act at issue need not be alleged, and the [charging instrument] may simply set out the offense in the language of the statute." *Id.* However, if "the statute defines the

3

offense only in general terms, a charge couched in the language of the statute is insufficient," and instead "[t]he facts which constitute the crime must be specifically set forth." *Id.* When conducting a review, the reviewing court should not look beyond the face of the charging instrument and therefore should not prospectively consider the sufficiency of the evidence against the accused. *Id.* at 1031. That is because "[t]he merits of a case are not meant to be decided in the vacuum of a motion to dismiss." *Id.* Of paramount importance to us is the fact that the requirement "that a person be properly informed of 'the nature and cause' of criminal accusations made against him is no mere technicality." *Id.* at 1033. The Illinois Supreme Court has held that the pivotal question when evaluating the sufficiency of a charging instrument is "whether there was sufficient particularity to allow the accused to prepare a defense." *People v. Klepper*, 234 Ill. 2d 337, 351 (2009).

¶ 8     With regard to the statute under which the individual is charged, a reviewing court's primary objective when construing a statute "is to ascertain and give effect to the intent of the legislature." *People v. Molnar*, 222 Ill. 2d 495, 518 (2006). We begin with the language of the statute, which must be given its plain and ordinary meaning, and if we conclude that the language of the statute is clear and unambiguous, we "apply the statute without resort to further aids of statutory construction." *Id.* at 518-19. Thus, it is only when language within a penal statute is ambiguous that we resort to rules of statutory construction such as the rule of lenity, which requires that in such situations the penal statute "be strictly construed to afford lenity to the accused." *In re Detention of Powell*, 217 Ill. 2d 123, 142 (2005). However, the rule of lenity has limits and does not allow a court to construe a penal statute " 'so rigidly *** as to defeat the intent of the legislature.' " *Id.* (quoting *People v. Washington*, 343 Ill. App. 3d 889, 903 (2003)). Moreover, we are mindful that "[a]ll the provisions of an enactment should be viewed as a

whole" and that "[w]ords and phrases should not be construed in isolation, but must be interpreted in light of other relevant statutory provisions." *Molnar*, 222 Ill. 2d at 519. We are also mindful of the longstanding rule that a statute should be construed so as to avoid an absurd result. See, *e.g.*, *People v. Dunlap*, 110 Ill. App. 3d 738, 743 (1982).

¶ 9        In addition, we presume that a statute is constitutional, and if "reasonably possible," we will construe a statute "so as to affirm its constitutionality." *People v. Howard*, 2017 IL 120443, ¶ 24. Nevertheless, to avoid due process concerns, a penal statute must give a person of ordinary intelligence a reasonable opportunity to know what is prohibited so that the person may act accordingly. *Id.* ¶ 25. "[T]he statute must provide standards that are sufficiently clear to avoid arbitrary and discriminatory enforcement and application by police officers, judges, and juries." *Id.* If the statute's terms are so ill-defined that the ultimate decision as to the meaning of the statute rests not on objective criteria or facts, but instead on the opinions and whims of the trier of fact, the statute will be deemed to violate due process on the basis of vagueness. *Id.* To determine this, the reviewing court must decide if the statute is vague "as applied to the conduct for which [the] defendant" was charged. *Id.* Our review of questions of statutory interpretation is a *de novo* review. *Molnar*, 222 Ill. 2d at 519. We may affirm the ruling of the trial court on any basis supported by the record. See, *e.g.*, *Evans v. Lima Lima Flight Team, Inc.*, 373 Ill. App. 3d 407, 418 (2007); see also, *e.g.*, *People v. Johnson*, 208 Ill. 2d 118, 134 (2003). We may do so because the question before us on appeal is the correctness of the result reached below, rather than the correctness of the reasoning upon which that result was reached. See, *e.g.*, *Johnson*, 208 Ill. 2d at 128.

5

¶ 10    We begin our review in this case with the language of the statute from which the charge in the amended information was crafted. Found within section 3(a) of SORA is a paragraph that states, in its entirety:

> "A sex offender or sexual predator who is temporarily absent from his or her current address of registration for 3 or more days shall notify the law enforcement agency having jurisdiction of his or her current registration, including the itinerary for travel, in the manner provided in Section 6 of this Act for notification to the law enforcement agency having jurisdiction of change of address." 730 ILCS 150/3(a) (West 2016).

As the State aptly notes, section 6 explains how to notify a law enforcement agency having jurisdiction of a change of address but does not specify a time frame for so doing, instead stating that the, *inter alia*, change of address notification must be made "within the time period specified in Section 3" (*id.* § 6).

¶ 11    On appeal, the State, which has supplemented the record in this case with the order of Judge Middendorff that Judge Brandmeyer relied upon to make his ruling, contends Judge Brandmeyer erred in granting the defendant's motion to dismiss. The crux of Judge Middendorff's ruling, relied upon by Judge Brandmeyer, is that the SORA statutory scheme does not explicitly provide a time period during which a defendant is required to report his or her temporary absence from his or her registered address, and that accordingly there is no offense that can be charged as a result of a failure to report a temporary absence. The argument advanced by the State on appeal is that when the relevant sections of SORA are "read in conjunction," they "lead[ ] to a logical conclusion that there is, in fact, a 3-day period in which [a] defendant is to report a temporary absence, because [a] defendant will be in violation of the law upon his third day of temporary absence if he never provided any statutory notification." The State contends

that the trial court's interpretation of the statutory scheme "would violate the purpose of the statute as identified by the [Illinois] Supreme Court in *People v. Pearse*, 2017 IL 121072, and could render the statute unconstitutionally vague." The defendant responds on appeal by arguing that the trial court's concerns are valid ones and that, *inter alia*, the position put forward by the State on appeal runs afoul of due process and the rule of lenity because the plain and ordinary meaning of the language of the statute simply does not support the State's position that an offense has been charged in this case.

¶ 12    As stated above, for support for its position in this case, the State points to *People v. Pearse*, 2017 IL 121072. In *Pearse*, the Illinois Supreme Court noted that when applied to some situations involving the registering, reregistering, and/or changing of one's address, the SORA statutory scheme "leaves something to be desired, in terms of clarity and consistency." *Id.* ¶ 39. The court reiterated its previous pronouncement, in other cases, that the purpose of SORA and its statutory scheme "is to aid law enforcement by facilitating ready access to information about sex offenders and, therefore, to protect the public." *Id.* ¶ 41. The court then endeavored to set forth an analysis of the relevant sections of SORA that would "fully promote[ ] the purpose of" SORA and also would be "in accord with the legislature's intent." *Id.* In so doing, the court examined the relevant statutory text and then laid out the steps the defendant in that case was required to undertake to be in compliance with the statute. *Id.* ¶ 44. Although the court did not discuss or analyze the parameters of the "ready access to information about sex offenders" that SORA is designed to provide, the court did, *inter alia*, note that "the statutory mechanism for more precisely tracking the present whereabouts of an offender" includes the language in section 3(a) that "requires an offender 'temporarily absent from his *** current address of registration for 3 or more days' to 'notify the law enforcement agency having jurisdiction of his *** current

7

registration' of, *inter alia*, his 'itinerary for travel.' " *Id.* ¶ 46 (quoting 730 ILCS 150/3(a) (West 2012)). Near the end of its opinion, the court noted that it appeared the defendant in *Pearse* had attempted to comply with the law, and the court encouraged the legislature "to review this statutory scheme and revise it for purposes of clarity" because offenders subject to SORA must "have fair notice of what is required." *Id.* ¶ 48.

¶ 13    In this case, the crux of the State's argument for reversal is that SORA requires that a "registrant who is temporarily absent for three or more days in a calendar year must report in person the new address to the law enforcement authority which holds jurisdiction over the registrant's current registration." The State contends there are no due process or rule of lenity concerns in this case "because the time frame for such notification under Section 3(a) is embedded in the very character of what constitutes a 'temporary absence.' " According to the State, the "notification mandate" of section 3(a) "does not materialize until the defendant is absent at least three days." Therefore, the State posits, because a violation comes into existence on the third day, a registrant must "provide notification of absence at some point prior to the third day," notwithstanding the fact that the statute does not expressly so state. The State repeatedly asserts that it would make no sense for the legislature to create a notification requirement for temporary absences of three or more days but fail to provide a mechanism— such as the criminal charge filed in this case—to enforce that requirement.

¶ 14    We agree with the State that the only logical construction of the temporary absence notification requirement of section 3(a), as written, is one that requires the notification to be made on, or prior to, the third day of temporary absence. Elsewhere in SORA, where a "grace period" for compliance with a provision of the statute exists, the legislature makes this clear. See, *e.g.*, 730 ILCS 150/3(b) (West 2016) (person required to register under SORA, "regardless of

8

any initial, prior, or other registration, shall, within 3 days of beginning school, or establishing a residence, place of employment, or temporary domicile in any county, register in person"); *id.* § 3(c)(2.5) (if person required to register under SORA has not been notified of person's requirement to register, then when person is notified, person "must then register within 3 days of notification"); *id.* § 4 (person required to register under SORA has duty to register "within 3 days of release" from facility or institution of confinement); *id.* § 5-5 (hospital or treatment facility that has received information about where a registrant plans to reside, work, and/or attend school upon release "shall report the information to the Department of State Police within 3 days"); *id.* § 6 ("law enforcement agency shall, within 3 days of the reporting in person by the person required to register under this Article, notify the Department of State Police of the new place of residence"). Therefore, we agree with the State that the absence of such language in the temporary absence paragraph of section 3(a) demonstrates that the legislature intended for there to be no grace period under this provision and for notification to be required on, or prior to, the third day of temporary absence. Our interpretation is consistent with the plain language of the paragraph, in which the legislature states that a registrant "who *is* temporarily absent" must comply with the notification requirement. (Emphasis added.) *Id.* § 3(a). If the legislature had stated that a registrant who "was" or who "has been" temporarily absent must comply, that would support the existence of some kind of grace period for compliance, notwithstanding the legislature's failure to specify such a grace period. Likewise, if the legislature had stated that a registrant who "will be" temporarily absent must comply, that would support a strictly prospective notification requirement.

¶ 15    This, however, does not end our inquiry. As the defendant points out, section 3(a) does not explicitly state whether to qualify thereunder the temporary absence in question may consist

9

of three *aggregate* days of temporary absence in a calendar year (which the State, on appeal, seems to suggest is the case) or must consist of three *consecutive* days of temporary absence. We believe this distinction to be significant to those registered under SORA, who must understand the restrictions imposed by section 3(a) if they are to be held criminally liable for alleged violations of the section. See, *e.g.*, *Howard*, 2017 IL 120443, ¶ 25 (penal statute must give person of ordinary intelligence a reasonable opportunity to know what is prohibited so that person may act accordingly). If a registrant is not required to make a notification unless there is a three-consecutive-day temporary absence, that registrant clearly has much more latitude when planning a temporary absence (or taking a spontaneous temporary absence) from the registered address than if a temporary absence of three aggregate days in a calendar year triggers the notification requirement. For example, under a three-consecutive-day scenario, a registrant could be temporarily absent from the registered address for a two-consecutive-day period each week without ever triggering the notification requirement. Obviously, that would not be the case under a three-aggregate-day scenario. Thus, a three-aggregate-day construction of section 3(a) would impose a greater burden, and/or restriction, on registrants.

¶ 16    Because the paragraph of section 3(a) that gives rise to the criminal charge in this case is silent on this point, to determine if the legislature intended a three-aggregate-day scenario or a three-consecutive-day scenario for purposes of the temporary absence notification requirement in that paragraph, we turn, as the *Pearse* court did as it attempted to ascertain the legislative intent of the statute, to the rest of the statute. See also, *e.g.*, *Molnar*, 222 Ill. 2d at 519 (all provisions of enactment should be viewed as a whole; words and phrases should not be construed in isolation but must be interpreted in light of other relevant statutory provisions). As the *Pearse* court noted, in SORA, the legislature sometimes explicitly states that the days in question are aggregate ones.

10

See 2017 IL 121072, ¶ 42 (" 'fixed residence' " means " 'any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year' " (quoting 730 ILCS 150/2(I) (West 2012)), and " 'place of residence or temporary domicile' " is defined as " 'any and all places where the sex offender resides for an aggregate period of time of 3 or more days during any calendar year' "[1] (quoting 730 ILCS 150/3(a) (West 2012))). In addition, we note that when, in SORA, the legislature does not include the language "an aggregate period of time of" prior to its listing of a number of days, and language referring to a "calendar year" after the listing, the legislature appears to intend to refer to consecutive days, especially when used in the same sentence in which explicit aggregate-day language appears. For example, section 2(G) defines an out-of-state employee as a registrant who works in Illinois "for a period of time of 10 or more days or for an aggregate period of time of 30 or more days during any calendar year." 730 ILCS 150/2(G) (West 2016). In this section, if the legislature did not intend the "10 or more days" to refer to consecutive days, the provision would make no sense and, indeed, would contradict itself. See also, *e.g.*, *id.* § 3(a-5) (out-of-state student or employee registrant to register in municipality in which he or she attends school or is employed "for a period of time of 5 or more days or for an aggregate period of time of more than 30 days during any calendar year"). Moreover, in a number of other sections of SORA in which the legislature uses only the number of days, without aggregate-day language, it would defy logic and make no sense to graft aggregate-day language onto the statute. See, *e.g.*, *id.* § 4 (person required to register under SORA must be informed of "duty to register in person within 3 days of release" from facility or institution of confinement); *id.* § 5-5 (hospital or treatment facility that has received information

___

[1]For purposes of clarity, we note that under this definition, one could be temporarily absent from one's registered address for three or more days (be they consecutive days or aggregate ones) without necessarily establishing a new residence or temporary domicile, if one stayed at multiple places, each for less than three aggregate days in one calendar year, during the temporary absence(s) from the registered address.

11

about where a registrant plans to reside, work, and/or attend school upon release "shall report the information to the Department of State Police within 3 days"); *id.* § 6 ("law enforcement agency shall, within 3 days of the reporting in person by the person required to register under this Article, notify the Department of State Police of the new place of residence"). Thus, we conclude that unless the legislature explicitly uses aggregate-day language in a particular provision of SORA, it intends to refer to consecutive days in that provision.

¶ 17    We are mindful of the *Pearse* court's quest to interpret SORA so as to "fully promote[ ]" its purpose, while remaining "in accord with the legislature's intent." 2017 IL 121072, ¶ 41. We recognize as well that such a quest is not always an easy one. On the one hand, it would appear to be arguable whether, if the legislature intended the notification requirement to be triggered by a three-consecutive-day temporary absence, the requirement would serve to advance the underlying purpose of SORA (see *id.* (purpose of SORA and its statutory scheme "is to aid law enforcement by facilitating ready access to information about sex offenders and, therefore, to protect the public")), because, as noted above, it would allow a registrant to be temporarily absent for multiple two-consecutive-day periods of time, presumably *ad infinitum*, without ever triggering the notification requirement, which would appear to undermine the idea of authorities possessing "ready access to information" about the whereabouts of such a registrant, particularly if the registrant's temporary wanderings were orchestrated in a manner that did not lead to the establishment of a new residence or temporary domicile (see *infra* ¶ 16 n.1). On the other hand, it is equally arguable whether, if the legislature intended the temporary absence notification requirement to apply to three aggregate days in a calendar year, that requirement would serve to advance the underlying purpose of SORA either because if there were no notification requirement until the third day under an aggregate-day scenario, there would be no "ready access

12

to information" about the whereabouts of the registrant on the first and second days, which, in the three-aggregate-day scenario, could be weeks or even months apart from one another and from the third day.

¶ 18    In any event, as noted above, the parameters of the "ready access to information" that SORA is intended to provide are not clear. Although the State, in its reply brief, posits that SORA "at least has the salient purpose of providing current, reliable information to the police and the public *all the time*" (emphasis in original), and although the defendant contends (perhaps with tongue in cheek) that "[i]f 24/7 surveillance were required, the legislature should have created statutes to place a GPS system on every registrant," we note that statutory mechanisms beyond SORA already exist that allow, after appropriate due process measures have been complied with, far more significant restrictions on individual liberty, should law enforcement authorities believe they can prove those restrictions are warranted in a particular case. See, *e.g.*, the Sexually Dangerous Persons Act (725 ILCS 205/0.01 *et seq.* (West 2016)) and the Sexually Violent Persons Commitment Act (725 ILCS 207/1 *et seq.* (West 2016)). See also *People v. Tetter*, 2018 IL App (3d) 150243 (concluding that SORA and its statutory scheme now constitute punishment and implicate great individual liberty concerns that could result in successful as-applied challenges to them).

¶ 19    These points notwithstanding, we conclude based upon our reading of the statute as a whole that it was the intent of the legislature to require that the temporary absence at issue in this case be one of three or more consecutive days. Moreover, we conclude that were we not to find that the legislature intended a three-consecutive-day scenario but were to find instead that the plain language of section 3(a) gives rise, as equally plausible and reasonable interpretations, to both an aggregate-day and a consecutive-day scenario for triggering the temporary absence

13

notification requirement, we would find the statute to be ambiguous on this point.[2] As explained above, when language within a penal statute is ambiguous, we must resort to rules of statutory construction such as the rule of lenity, which requires that in such situations the penal statute "be strictly construed to afford lenity to the accused." *In re Detention of Powell*, 217 Ill. 2d at 142. In this case, the rule of lenity would require us to construe section 3(a) to contain the requirement of a three-consecutive-day temporary absence as the trigger for the notification requirement because, as we have explained, that is a less-harsh result than would be a three-aggregrate-day temporary absence trigger. As noted above, we believe this is what the legislature intended anyway. However, even if the legislature did not so intend, we do not believe that applying the rule of lenity in this manner, in this case, would mean we were construing the provision " 'so rigidly *** as to defeat the intent of the legislature' " (*id.* (quoting *Washington*, 343 Ill. App. 3d at 903)).

¶ 20    Having concluded that section 3(a) requires a three-consecutive-day temporary absence as the trigger for the notification requirement—whether because that was the intent of the legislature or because the rule of lenity compels such a result—we return to the charging instrument in this case to determine if it *strictly* complies with the requirements of the Code. See *DiLorenzo*, 169 Ill. 2d at 321-22 ("[w]hen the sufficiency of the charging instrument is attacked in a pretrial motion," *de novo* standard of review requires reviewing court "to determine whether the instrument *strictly* complies with" the Code (emphasis in original)). As explained above, "[t]he precise allegations necessary to accomplish [the purpose of the Code's requirements] may

---

[2]Based upon the foregoing analysis of the language of the entire statute, we do not believe it would be reasonable to conclude that the plain language of section 3(a) gives rise only to an aggregate-day scenario as the trigger for the temporary absence notification requirement. We believe only a revision of the language of the statute could support such an interpretation.

14

vary depending upon the statutory provision alleged to have been violated and the nature of the offense." *Gerdes*, 173 Ill. App. 3d at 1029. If "the statute defining an offense specifies the type of conduct prohibited, the particular act at issue need not be alleged, and the [charging instrument] may simply set out the offense in the language of the statute." *Id.* However, if "the statute defines the offense only in general terms, a charge couched in the language of the statute is insufficient" and instead "[t]he facts which constitute the crime must be specifically set forth." *Id.* In this case, as explained above, section 3(a) does not explicitly specify the type of conduct that is prohibited by the statute—a temporary absence of three or more *consecutive* days—but instead defines the offense only in the more general terms of a temporary absence of three or more days. Accordingly, we conclude that a charge under section 3(a) that is couched in the language of section 3(a) is insufficient and instead the facts that constitute the alleged crime are required to be specifically set forth. See *id.*

¶ 21   The amended information in this case does not allege that the defendant was temporarily absent from his registered address for three or more consecutive days. Thus, it omits one of the elements of the offense the defendant was alleged to have committed. It does not adequately apprise the defendant "of the nature of the offense with which he is charged so that he may prepare a defense" and does not "assure that the charged offense may serve as a bar to subsequent prosecution arising out of the same conduct." *Terry*, 342 Ill. App. 3d at 867. As explained above, the Illinois Supreme Court has held that the pivotal question when evaluating the sufficiency of a charging instrument is "whether there was sufficient particularity to allow the accused to prepare a defense." *Klepper*, 234 Ill. 2d at 351. In light of the fact that the offense in question here required the State to prove, as one of the elements of the offense, a temporary absence of three or more *consecutive* days over the course of the broad three-month time period

15

of the "12th day of November, 2016, through the 12th day of February, 2017" alleged by the State in the charging instrument it drafted, we do not believe that the instrument's less-specific allegation that the defendant was temporarily absent for "3 or more days" during that time period contained sufficient particularity to allow the defendant to prepare a defense. Therefore, the charging instrument in this case fails to *strictly* comply with the requirements of the Code and does not sufficiently charge an offense in this case. See *DiLorenzo*, 169 Ill. 2d at 321-22 ("[w]hen the sufficiency of the charging instrument is attacked in a pretrial motion," *de novo* standard of review requires reviewing court "to determine whether the instrument *strictly* complies with" the Code (emphasis in original)).[3]

¶ 22                                    CONCLUSION

¶ 23     For the foregoing reasons, we affirm the order of the circuit court of Clinton County that granted the defendant's motion to dismiss the one-count information that charged him with "Unlawful Failure of Sex Offender to Report Absence From Address of Registration."


¶ 24     Affirmed.

---

[3]We take no position with regard to whether a challenge to this charging instrument, if raised for the first time on appeal, would be successful, as that question is not before us. We are aware that a less-stringent standard—one that requires only prejudice to the defendant, not strict compliance with the Code—applies when the issue is raised for the first time on appeal rather than in a pretrial motion. See, *e.g.*, *People v. Carey*, 2018 IL 121371, ¶ 22.

16

2018 IL App (5th) 170079

NO. 5-17-0079

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Clinton County. |
| | ) | |
| v. | ) | No. 17-CF-20 |
| | ) | |
| SAMUEL B. BURCHELL, | ) | Honorable |
| | ) | Stanley M. Brandmeyer, |
| Defendant-Appellee. | ) | Judge, presiding. |

_____

**Opinion Filed:**       **April 6, 2018**

_____

**Justices:**     Honorable James R. Moore, J.

          Honorable Thomas M. Welch, J., and
          Honorable David K. Overstreet, J.,
          Concur

_____

**Attorneys**     Hon. John Hudspeth, State's Attorney, Clinton County Courthouse, 850
**for**             Fairfax, Room 210, Carlyle, IL 62231; Patrick Delfino, Director, David
**Appellant**   J. Robinson, Acting Deputy Director, Patrick D. Daly, Staff Attorney,
            Office of the State's Attorneys Appellate Prosecutor, 730 East Illinois
            Highway 15, Suite 2, Mt. Vernon, IL 62864

_____

**Attorneys**     Michael J. Pelletier, State Appellate Defender, Ellen J. Curry, Deputy
**for**             Defender, Eun Sun Nam, Assistant Appellate Defender, Office of the State
**Appellee**    Appellate Defender, Fifth Judicial District, 909 Water Tower Circle, Mt.
            Vernon, IL 62864

_____